# EXHIBIT A

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2023 - 6347          SECTION:  6          DIVISION:

ELLERY RAGAS

VERSUS

TAYLOR-SEIDENBACH, INC., ET AL.

FILED: _____          _____

                                                              **DEPUTY CLERK**

### PETITION FOR DAMAGES AND DEMAND FOR JURY

COMES NOW Petitioner, ELLERY RAGAS, by and through undersigned counsel, who respectfully states the following:

**1.**

Petitioner, ELLERY RAGAS, is an adult domiciliary of Jefferson Parish, State of Louisiana.

**2.**

Made Defendants herein are the following: either foreign corporations licensed to do and doing business in the State of Louisiana, domestic corporations licensed to do and doing business in the State of Louisiana, or individuals that are liable unto the Petitioners for the claims asserted herein:

### SUPPLIERS/ DISTRIBUTORS/ CONTRACTORS/MANUFACTURERS/INSURERS

A. **ANCO INSULATIONS, INC.**

B. **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, as the insurer of Gulf Engineering Company, L.L.C., as successor-by-merger to Gulf Engineering Company, Inc., f/k/a Gulf Engineering Service & Specialty Company, Inc.**

C. **ELLIOTT COMPANY, f/k/a Elliott Turbomachinery**

D. **FLOWSERVE US INC., as successor-in-interest to Rockwell Manufacturing Company**

E. **GENERAL ELECTRIC COMPANY**

F. **GOULDS PUMPS, LLC**

G. **GULF ENGINEERING COMPANY, L.L.C., as successor-by-merger to Gulf Engineering Company, Inc., f/k/a Gulf Engineering Service & Specialty Company, Inc.**

H. **HONEYWELL INTERNATIONAL, INC., f/k/a Allied Signal Inc., as successor-**

in-interest to **THE BENDIX CORPORATION**

I. **ITT, LLC, individually and as successor-in-interest to BELL & GOSSETT PUMP COMPANY**

J. **LOUISIANA INSURANCE GUARANTEE ASSOCIATION, as legal successor of American Mutual Liability Insurance Company, as insurer of Gabler Insulations, Inc.**

K. **PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, f/k/a VIACOM INC., successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION .**

L. **REDCO CORPORATION, f/k/a CRANE CO.**

M. **TAYLOR-SEIDENBACH, INC.**

N. **TUTHILL CORPORATION, individually and as successor-in-interest to COPPUS ENGINEERING**

O. **RHEEM MANUFACTURING COMPANY**

P. **ZURICH AMERICAN INSURANCE COMPANY, as insurer of Anco Insulations, Inc.**

Q. **ZURN INDUSTRIES, LLC**

**EMPLOYERS/ PREMISES OWNERS/VESSEL OWNERS/
VESSEL OPERATORS/VESSEL CHARTERS/INSURERS**

R. **FREEPORT-MCMORAN INC., individually and as successor-in-interest to Freeport Sulphur Company**

S. **LIBERTY MUTUAL INSURANCE COMPANY as the insurer of Mosaic Global Holdings, Inc., individually and f/k/a IMC Global, Inc., successor by merger to Freeport-McMoran, Inc., successor by merger to Freeport Sulphur Company, f/k/a Freeport Minerals Company**

T. **MOSAIC GLOBAL HOLDINGS, INC., individually and f/k/a IMC Global, Inc., successor by merger to Freeport-McMoran, Inc., successor by merger to Freeport Sulphur Company, f/k/a Freeport Minerals Company**

**3.**

Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42(2) because Defendant, Taylor-Seidenbach, Inc., is a domestic corporation licensed to do business in this State and has designated as its primary business office and/or primary place of business in Louisiana as Orleans Parish.

**4.**

This action is within the jurisdiction of the court and Orleans Parish is a proper venue pursuant to Louisiana Code of Civil Procedure Article 73 because the defendants listed above contributed to Petitioner's exposure to asbestos and subsequent contraction of lung cancer and, therefore, each is solidarily liable to Petitioner with Defendant, Taylor-Seidenbach, Inc., domiciled in Orleans Parish.

**5.**

This Court has jurisdiction over this cause of action, which occurred principally in the State of Louisiana, and in part in and on the navigable waters of Louisiana, including in Orleans Parish. Petitioner, ELLERY RAGAS, asserts Louisiana State Law claims against all Defendants. As to the Vessel Owner, Vessel Operator, and Vessel Charter Defendants, namely Defendants FREEPORT-MCMORAN INC., LIBERTY MUTUAL INSURANCE COMPANY, and MOSAIC GLOBAL HOLDINGS, INC., Petitioner also asserts claims under the Jones Act, Title 46, Section 30104 *et seq.*, and General Maritime Law, and files this action in this Court pursuant to the Savings to Suitors Clause. While employed by Freeport-McMoran Inc., Petitioner, ELLERY RAGAS, was a seaman on navigable waters, including the navigable and territorial waters of Louisiana, including Orleans Parish, and other States, and the navigable waters within the jurisdiction of this Court. Petitioner worked on vessels including, but not limited to, platforms, which qualify as a "vessel" under the Jones Act. His work primarily occurred on navigable rivers, such as the Mississippi River.

**6.**

The Defendants identified in Paragraph 2 above are all either foreign corporations licensed to do business and are doing business in the state of Louisiana or are domestic corporations licensed to do business and are doing business in the state of Louisiana, and the Defendants are liable to Petitions for the claims asserted herein.

## BACKGROUND

**7.**

When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, lung cancer, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

**8.**

As a direct and proximate result of having inhaled, ingested, or otherwise having been exposed to asbestos as described in Paragraph 9 below, Petitioner, ELLERY RAGAS, contracted and was diagnosed with malignant lung cancer in February of 2023.

**9.**

Petitioner and his father, Walter P. Ragas, Sr., were exposed to asbestos and asbestos-containing materials in the following manners:

1. Petitioner's father, Walter P. Ragas, Sr., worked as an auto mechanic throughout the time from Petitioner's birth in 1958 until he moved out of the family home. Mr. Walter P. Ragas, Sr. was exposed to asbestos from working with asbestos-containing friction materials and being in close proximity to others working with the same. In addition to unknowingly breathing asbestos fibers while performing this work, Mr. Walter P. Ragas, Sr.'s clothes became contaminated with asbestos and were brought home to the family home and vehicles, thereby causing Petitioner and other family members to be exposed to dangerously high levels of asbestos, which he breathed.

2. Petitioner, ELLERY RAGAS, worked for Freeport-McMoran Inc., as a helper and operator from 1978 until 2000, at its Port Sulphur, Callou Island, Grande Isle, and Garden Island Bay plants. Petitioner was regularly transported by boat to such plants. At these plants, Petitioner worked with and around asbestos-containing insulation products associated with piping, turbines, boilers, valves, pumps, and other equipment. Petitioner also worked with and around asbestos-containing gaskets and packing materials associated with valves and pumps. As result of all of this work, Petitioner was exposed to dangerously high levels of asbestos, which he breathed.

3. Petitioner also worked with asbestos-containing friction products while performing brake jobs on family and friends' vehicles in the 1970's, which caused him to be exposed to dangerously high levels of asbestos, which he breathed.

All of the above exposures subsequently caused Petitioner's development of lung cancer.

**10.**

Petitioner, ELLERY RAGAS, his father, and their family members were unnecessarily exposed to asbestos for decades due to Defendants' failure to inform them of the health hazards associated with asbestos exposure. Defendants failed to warn Petitioner and his father of the health hazards associated with working with and around asbestos materials, including the dangers of exposing family members to asbestos by returning home in work clothes contaminated with asbestos. Defendants also failed to provide a safe work environment for their employees and invitees, despite having superior knowledge of critical medical and safety information related to the dangers from exposure to asbestos, due to their lack of providing any meaningful or adequate supervision, workplace safety instruction, safety equipment, industrial hygiene procedures, medical surveillance programs, respiratory protection requirements, locker rooms, or even posted warning signs. Petitioner and his father were also exposed to asbestos as a

result of working with and around asbestos-containing materials and products designed, manufactured, sold, supplied and/or maintained by Defendants. These asbestos-containing materials and products were defective, unreasonably dangerous, and unreasonably dangerous per se, and Defendants failed to provide any type of sufficient safety instructions for reducing, or warnings related to, the health hazards these products would present in the course of their normal foreseeable use by individuals, such as Petitioner.

### 11.

Each of the Defendants knew, or should have known, through industry and medical studies and standards, the existence of which were unknown to Petitioner or Petitioner's father, of the health hazards inherent in exposing workers, consumers, and members of the general public to asbestos-containing materials. Despite such knowledge, Defendants chose not to provide such individuals with adequate warnings or instructions for safely working with or around asbestos-containing materials.

### 12.

Because of the latency period between exposure to asbestos and the onset of malignant lung cancer, Petitioner has only recently discovered his injuries and not more than one year preceding the filing of this Petition for Damages.

### 13.

Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Petitioner also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

### 14.

This case is not removable to federal district court. Petitioner's sole non-state law claim in this case is under the Jones Act. The Jones Act incorporates, in whole, the provisions of the Federal Employers Liability Act, found at Title 45, Section 51 et seq., and all statutes regulating FELA claims. 46 U.S.C. § 30104. Jones Act claims are therefore statutorily non-removable pursuant to Title 28, Section 1445(a), when, as here, they are filed in state court pursuant to the "saving to suitors" clause of Title 28, Section 1333, Part (a), which provides state courts with concurrent jurisdiction over Jones Act claims. Lewis v. Lewis & Clark Marine, Inc., 431 U.S. 438, 455 (2001) ("Moreover, in this case respondent raised a Jones Act claim, which is not

subject to removal to federal court even in the event of diversity of the parties. See 28 U.S.C.

1445(a) (incorporated by referenced into the Jones Act, 46 U.S.C. App. § 688(a))".) As to the

state-law claim defendant, Taylor-Seidenbach, Inc. is a forum defendant under 28 U.S.C. § 1441,

making removal improper.

**15.**

All causative exposures to asbestos sustained by Petitioner occurred on or before

December 1980.

**COUNT I: GENERAL NEGLIGENCE ALLEGATIONS**
**(All Defendants)**

**16.**

On information and belief, all Defendants identified in Paragraph 2 above were

responsible to provide Petitioner with warnings concerning hazardous conditions at their sites or

relating to their hazardous ACMs and generally to provide Petitioner with safe premises in order

to protect the life, health, safety, and welfare of Petitioner, including the following

responsibilities:

A.  Inspection, approval and supervision of these various ACMs and premises for hazards and vices that may present a hazard to Petitioner;

B.  To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people like Petitioner;

C.  To see that workers performed their duties pertaining to their work in a proper, safe, and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as to Petitioner;

D.  To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E.  To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F.  To keep abreast of state-of-the-art knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G.  To provide adequate warnings, safety equipment, ventilation, and breathing apparatus in order to prevent Petitioner from being harmed by exposure to asbestos in the environment in which he was required to be present;

H.  To make certain that Petitioner was provided a safe environment, free from asbestos dust inhalation and operations free from asbestos dust;

I.  To measure the levels of asbestos dust in the premises working environment;

J.  To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act; and

K.  To warn Petitioner of the dangers posed by the polluted atmosphere in which he

- 6 -

worked including but not limited to the risk of asbestosis, pleural disease, mesothelioma, lung cancer, other cancers, and the carcinogenic effect of the risk of lung cancer caused by asbestos exposure to persons with pre-existing smoking habits from the handling and use of asbestos.

## 17.

Not only did Defendants have the duties and responsibilities set forth in the immediately preceding Paragraph, but they also negligently failed to meet those duties and assumed other duties in the manner asserted in the following paragraphs.

## 18.

Upon information and belief, Defendants knew of the dusty atmospheres in which Petitioner and his father worked, which were damaging and dangerous to Petitioner. Each knew, or should have known, of the dangers to Petitioner's health posed by working in an atmosphere polluted with asbestos dust without proper protection or warnings. Petitioner alleges that Defendants knew or should have known that injuries, including but not limited to respiratory illness, could have been avoided by the use of adequate ventilation, warnings, packaging, and safety equipment.

## 19.

Petitioner was exposed to asbestos or asbestos containing products as a result of the negligence, defective design, manufacture, distribution, marketing, sale, supply, and/or use of asbestos products by Defendants identified in Paragraph 2 above. Petitioner alleges that the negligence and other misconduct of these Defendants are/were a proximate cause of his injuries.

## 20.

Defendants were distributors, contractors, manufacturers, sellers, users, distributors, or suppliers of ACMs and were engaged in the business of using, manufacturing, or facilitating the manufacture of ACMs; represented themselves as manufacturers of ACMs; or were professional vendors of ACMs, all of which expected the ACMs to reach the Employer and Premises Defendants' facilities with said ACMs reaching same.

## 21.

The products mined, manufactured, sold, distributed, supplied, shipped, and/or used by these Defendants were defective, unreasonably dangerous, and unreasonably dangerous *per se* to Petitioner, who was an intended and foreseeable user and bystander exposed to these products. The defects included, without limitation:

    A.    The mining, manufacture, sale, supply, distribution and/or use of products that are unreasonably dangerous, or unreasonably dangerous *per se*;

B.   The mining, manufacture, sale, supply, distribution and/or use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Petitioner who would be foreseeably exposed to them in as a result of their intended use;

C.   Lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D.   Lack of safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E.   Failure of Defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F.   Failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

G.   Failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

H.   Failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

I.   Defects in the composition and construction of these products;

J.   Failure to recall these products mined, manufactured, sold, distributed and/or supplied;

K.   Failure to properly package these products so that they could be safely transported, handled, stored and/or disposed of; and

L.   Over-warranting the safety of these products that were manufactured, sold, supplied, or used by Defendants.

Petitioner alleges strict liability for things in Defendants' *garde*, possession, custody, or control, pursuant to Article 2317 of the Louisiana Code of Civil Procedure that have caused harm to Petitioner.

**22.**

The defective conditions of Defendants' products and fault, as noted above, were a proximate cause of Petitioner's injuries.

**23.**

Petitioner also alleges that each and every one of these Defendants were also negligent in engaging in the substandard conduct described above and that this negligence was also a proximate cause of Petitioner's injuries.

**24.**

The negligence of Defendants was a substantial factor in, and contributed to, causing damages to Petitioner.

## COUNT II: STRICT LIABILITY AND NEGLIGENCE ALLEGATIONS AGAINST SUPPLIERS/ DISTRIBUTORS/ CONTRACTORS/ MANUFACTURERS

### 25.

The Defendants were either all miners, manufacturers, sellers, users, distributors, contractors, and/or suppliers of asbestos products and were engaged in the business of using, manufacturing, or facilitating the manufacture of asbestos products, or representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos-containing products, which were expected to and did reach, including but not limited to, each of the facilities listed in Paragraph 2 from which ELLERY RAGAS was exposed.

### 26.

The products mined, manufactured, sold, distributed, supplied, and/or used by these defendants were defective, unreasonably dangerous, and unreasonably dangerous per se to Petitioner and his father who were intended and foreseeable users and bystanders who were exposed to these products. These defects include, without limitation, the following:

a.    the mining, manufacture, sale, supply, distribution, and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b.    the mining, manufacture, sale, supply, distribution, and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the individuals who would be foreseeably exposed to them in as a result of their intended use;

c.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d.    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e.    failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f.    failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

g.    failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h.  failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i.  defects in the composition and construction of these products;

j.  failure to recall these products mined, manufactured, sold, distributed and/or supplied;

k.  failure to properly package these products so that they could be safely transported, handled, stored, or disposed of; and

l.  over-warranting the safety of these products that were manufactured, sold, supplied, and/or used by Defendants.

**27.**

Petitioner alleges strict liability for things in Defendants' garde, possession, custody, or control, pursuant to Article 2317 of the Louisiana Code of Civil Procedure that have caused harm to Petitioner.

**28.**

The defective conditions of defendants' products and fault, as noted above, are a proximate cause of Petitioner's injuries complained of herein.

**29.**

Petitioners also allege that each and every one of the foregoing defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Petitioner's injuries.

## COUNT III: STRICT LIABILITY AND NEGLIGENCE ALLEGATIONS AGAINST EMPLOYERS/ PREMISES OWNERS/VESSEL OWNERS/ VESSEL OPERATORS/VESSEL CHARTERS

**30.**

The employers and their executive officers negligently, recklessly, willfully, and/or because of gross and wanton negligence or fault, failed to properly discharge their duties to the Petitioner in the following:

a.  failed to provide the Petitioner and his father with a safe work environment;

b.  failed to provide the Petitioner and his father with safety equipment;

c.  failed to provide the Petitioner and his father with correct, adequate, or proper safety equipment;

d.      recklessly and negligently failed to disclose, warn, or reveal critical medical and safety information to the Petitioner and his father regarding asbestos hazards in general and with regard to those specific hazards at the work site;

e.      recklessly concealed and negligently omitted to reveal critical medical and safety information from the Petitioner and his father regarding the safety and health risks associated with the asbestos and asbestos-containing products at the worksites;

f.      failed to timely remove asbestos hazards from the workplace;

g.      failed to properly supervise or monitor the work areas for compliance with safety regulations;

h.      failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air; and

i.      failed to provide the necessary facilities, practices, and procedures that would lessen or eliminate the transfer of asbestos from the workplace to the home on the clothing and/or person of the Petitioner and his father.

The above-described negligence, fault, and willful misconduct of these defendants were proximate causes of the Petitioner's injuries.

### 31.

At all times throughout Petitioner and his father's exposure to asbestos, the employers and executive officers knew that asbestos posed substantial health risks to those exposed to it, knew that there were specific engineering and industrial hygiene procedures which should have been employed to reduce exposures, and knew that those exposed to asbestos on the job could bring home asbestos on their clothes and thereby injuriously expose those in the household, yet the employers and executive officers consciously chose not to inform Petitioner or his father of this information or implement any meaningful safety precautions, all of which were a substantial contributing cause of Petitioner's injuries.

### 32.

Petitioner further alleges strict premises liability for the premises owners listed above in failing to provide ELLERY RAGAS with a safe place in which to work free from the hazards of asbestos, which failure was a proximate cause of ELLERY RAGAS's injuries.

### 33.

The premises within which ELLERY RAGAS was personally exposed to asbestos as set forth in Paragraph 9, were owned by and in the custody of the premises owners, who had control over all contractors and subcontractors working at their facility which was unreasonably dangerous due to the presence and use of asbestos and asbestos-containing products with little or no precautions taken to minimize the risk of exposure and absolutely no warning of that risk. This unreasonably dangerous condition was a direct and proximate cause of Petitioner's injuries set forth herein.

**34.**

The premises owners negligently, recklessly, willfully and/or because of gross and wanton negligence, fault, or strict liability, failed to properly discharge their duties to Petitioner and his father in the following particulars:

a.   failure to provide Petitioner and his father with a safe place to work;

b.   failure to provide Petitioner and his father with adequate engineering or industrial hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring, air monitoring, and procedures to prevent the transportation of asbestos fibers home on Petitioner and his father's clothing; and

c.   failure to inform or warn Petitioner or his father of the hazards of asbestos exposure.

These specific acts of fault were a substantial contributing factor of Petitioner's injuries.

WHEREFORE, based on the foregoing premises set out in Paragraphs 1 through 34, Petitioner requests that all Defendants named in the petition be served and cited to appear and answer as the law directs, and that, after due proceedings are had, Petitioner recovers of and from the Defendants individually, jointly, and *in solido* in an amount which the evidence may show proper at the time of trial, together with costs, and legal interest from the date of judicial demand until paid, to compensate Petitioner for the following:

a.   all past, present, and future medical costs or expenses related thereto;

b.   all past, present, and future lost earnings;

c.   all past, present, and future mental pain, suffering, anguish, and distress;

    d.   all past, present, and future physical pain and suffering;

    e.   the disfigurement suffered by Petitioner;

    f.   loss of quality of life;

    g.   past, present, and future disability; and

    h.   any such other and further relief, special and general, as law and equity may permit.

**DEMAND FOR TRIAL BY JURY**

Petitioner is entitled to, and specifically requests, a trial by jury of all issues of fact herein.

Respectfully submitted,

PHILIP C. HOFFMAN, LLC

_____
Philip C. Hoffman, LA Bar No. 32277
Dayal S. Reddy, LA Bar No. 31928
643 Magazine Street, Suite 300A
New Orleans, LA 70130
Telephone: 504-822-6050
Facsimile: 504-313-3911
Email: *phil@pchlawfirm.com*
     *dayal@pchlawfirm.com*
     *tara@pchlawfirm.com*
     *shanna@pchlawfirm.com*

**COUNSEL FOR PETITIONER**

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH THIS PETITION FOR DAMAGES AND DEMAND FOR JURY:**

1. **ANCO INSULATIONS, INC.**
   **Through its Registered Agent**
   **C.T. Corporation System**
   **3867 Plaza Tower Drive**
   **Baton Rouge, LA 70816**

2. **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, as the insurer of Gulf Engineering Company, L.L.C., as successor-by-merger to Gulf Engineering Company, Inc., f/k/a Gulf Engineering Service & Specialty Company, Inc.**
   **Via the Direct Action Statute**
   **Through the Louisiana Secretary of State**
   **8585 Archives Avenue**
   **Baton Rouge, LA 70809**

3. **ELLIOTT COMPANY, f/k/a Elliott Turbomachinery**
   **Through its Registered Agent**
   **CT Corporation System**
   **3867 Plaza Tower Drive, Second Floor**
   **Baton Rouge, LA 70808**

**A TRUE COPY**

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

4. FLOWSERVE US INC., as successor-in-interest to Rockwell Manufacturing Company
   Through its Registered Agent
   CT Corporation System
   3867 Plaza Tower Drive, 2nd Floor
   Baton Rouge, LA 70816

5. FREEPORT-MCMORAN INC., individually and as successor-in-interest to Freeport Sulphur Company
   Through its Registered Agent
   Registered Agent Solutions, Inc.
   3867 Plaza Tower Drive, 1st Floor
   Baton Rouge, LA 70816

6. GENERAL ELECTRIC COMPANY
   Through Its Registered Agent
   CT Corporation System
   3867 Plaza Tower Drive
   Baton Rouge, LA 70816

7. GOULDS PUMPS, LLC
   Through Its Registered Agent
   CT Corporation System
   3867 Plaza Tower Dr., 2nd Floor
   Baton Rouge, LA 70816

8. GULF ENGINEERING COMPANY, L.L.C., as successor-by-merger to Gulf Engineering Company, Inc., f/k/a Gulf Engineering Service & Specialty Company, Inc.
   Through Its Officer(s)/Agent
   Stuart Vint Massimini -or-
   William N. Massimini
   615 Hill Street
   Jefferson, LA 70121

9. HONEYWELL INTERNATIONAL, INC., f/k/a Allied Signal Inc., as successor-in-interest to THE BENDIX CORPORATION
   Through Its Registered Agent
   Corporation Service Company
   501 Louisiana Avenue
   Baton Rouge, LA 70802

10. ITT, LLC, individually and as successor-in-interest to BELL & GOSSETT PUMP COMPANY
    Via the Louisiana Long Arm Statute
    Through Its Registered Agent
    CT Corporation System
    334 North Senate Avenue
    Indianapolis, IN 46204

11. LIBERTY MUTUAL INSURANCE COMPANY as the insurer of Mosaic Global Holdings, Inc., individually and f/k/a IMC Global, Inc., successor by merger to Freeport-McMoran, Inc., successor by merger to Freeport Sulphur Company, f/k/a Freeport Minerals Company
    Via the Direct Action Statute
    Through the Louisiana Secretary of State
    8585 Archives Avenue
    Baton Rouge, LA 70809

12. LOUISIANA INSURANCE GUARANTEE ASSOCIATION, as legal successor of American Mutual Liability Insurance Company, as insurer of Gabler Insulations, Inc.
Through Its Registered Agent
Deidre Arceneaux
2142 Quail Run Drive
Baton Rouge, LA 70808

13. MOSAIC GLOBAL HOLDINGS, INC., individually and f/k/a IMC Global, Inc., successor by merger to Freeport-McMoran, Inc., successor by merger to Freeport Sulphur Company, f/k/a Freeport Minerals Company
Via the Louisiana Long Arm Statute
3033 Campus Drive
Minneapolis, MN 55441

14. PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS   CORPORATION, f/k/a VIACOM INC., successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION
Via the Louisiana Long Arm Statute
CBS Headquarters
51 W. 52nd Street
New York, NY 10019-6188

15. REDCO CORPORATION, f/k/a CRANE CO.
Via the Louisiana Long Arm Statute
Through Its Registered Agent
CT Corporation System
208 S. LaSalle Street
17th Floor, Suite 814
Chicago, IL 60604

16. RHEEM MANUFACTURING COMPANY
Via the Louisiana Long Arm Statute
1100 Abernathy Road, Suite 1400
Atlanta, GA 30328

17. TAYLOR-SEIDENBACH, INC.
Through Its Registered Agent
Hal Shepard
731 South Scott Street
New Orleans, LA 70119

18. TUTHILL CORPORATION, individually and as successor-in-interest to COPPUS ENGINEERING
Through its Registered Agent
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

19. ZURICH AMERICAN INSURANCE COMPANY, as insurer of Anco Insulations, Inc.
Via the Louisiana Direct Action Statute
Through the Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

20. ZURN INDUSTRIES, LLC
Through Its Registered Agent
CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, Louisiana 70816